**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**CASE NO. 25-cr-117 (ECT/SGE)**

---

UNITED STATES OF AMERICA

Plaintiff,

v.

JUSTIN DAVID EICHORN,

Defendant.

**JUSTIN EICHORN'S RESPONSE TO THE GOVERNMENT'S SENTENCING POSITION**

---

Justin Eichorn, through undersigned counsel, respectfully submits his response to the government's sentencing position and request for upward variance, ECF No. 108.

## INTRODUCTION

The government requests that this Court sentence Mr. Eichorn to serve 60 months in prison and be supervised by a federal probation officer until the day he dies. The government's position is remarkable. It is remarkable because it is unsupported by the record and would create a massive sentencing disparity between Mr. Eichorn and similarly situated defendants.

Mr. Eichorn's guidelines range is 15 to 21 months. The government agreed to that range in his plea agreement and did not object to that range when calculated in the PSR. (ECF No. 88 at 7; PSR ¶ 63.) Yet the government now seeks a sentence four times the bottom of the range and nearly three times the top of the range. The government's requested sentence is also two and a half times the sentences this Court

imposed upon two federal defendants arrested in the same state sting operation—24 months—neither of which the government appealed.

Both a custodial sentence of 60 months and lifetime supervision would be substantially greater than sentences which similarly situated defendants have received in this District, Circuit, and across the country. For the reasons detailed in his initial sentencing position and below, Mr. Eichorn respectfully requests this Court impose a sentence of time served, followed by five years of supervised release. That sentence would comport with Section 3553(a)'s requirement that the Court impose a sentence sufficient but not greater than necessary.

## I. Imposition of 60 Months of Imprisonment Would Be Far Greater Than Necessary and Create an Unwarranted Sentencing Disparity.

Conspicuously absent from the government's sentencing position is any discussion of Section 3553(a)(6)'s requirement that the Court "shall consider—the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The government presumably chose not to address Section 3553(a)(6) because it is aware the sentence it requests would create a massive sentencing disparity between Mr. Eichorn and similarly situated defendants.

### A. The Government Seeks a Massive Variance Based on Factors Already Built Into the Guidelines Range.

Rather than address Section 3553(a)(6), the government labels Mr. Eichorn "a dangerous offender with a sexual interest in minors, who attempted to groom a child,

to have sex with a child, and to obtain child pornography from that child." (ECF No. 108 at 6.) These inflammatory accusations are not supported by the record.

To begin with, Mr. Eichorn is not a "dangerous offender." As the government is aware, he has no prior criminal history. (PSR ¶ 34.) And as the government is also aware, the PSR does not include so much as an accusation by the government, the Probation Office, or anyone else that Mr. Eichorn has committed any misconduct involving a minor. *See generally* PSR.

There also was no child. There was an adult undercover officer who posted an advertisement for commercial sex on an adult personals website, listing an age older than seventeen. (ECF No. 88 at 2; PSR ¶¶ 9–13.) Mr. Eichorn responded to the advertisement and negotiated the "rates" the advertisement offered. His conduct was criminal, and he has accepted full responsibility for his actions. (PSR ¶ 16.) But he did not seek out a minor, befriend her, build her trust, or desensitize her to abuse—the types of conduct the term "grooming" commonly describes.

Mr. Eichorn did not seek "to obtain child pornography." The Probation Office concluded Mr. Eichorn "did not explicitly request an image containing child pornography" (PSR ¶ 20), and the government did not object to that conclusion.

The government's additional assertions that Mr. Eichorn "poses a danger to every child within his reach—physically and electronically" (ECF No. 108 at 5–6) and that his "deeply held perverse desires make him a significant danger to the community" (*id.* at 8) are similarly baseless. No psychological evaluation, diagnosis, or finding of dangerousness appears anywhere in the record. To the contrary, the

Probation Officer who interviewed Mr. Eichorn and investigated his history made no finding of dangerousness. *See generally* PSR. Further, consistent with his lack of criminal history, Mr. Eichorn has fully complied with all his conditions while on pretrial release, while living in a halfway house, and while in custody since his arrest. (PSR ¶¶ 7, 37.)

What the government relies upon to seek an upward variance—the nature of the communications, the age Mr. Eichorn believed the fictitious minor to be, the attempt itself—is already fully accounted for in the offense level which the government agrees applies. "The general rule is that a district court may impose an upward variance based on facts already included in the advisory sentencing guidelines where the advisory guidelines do not fully account for those facts." *United States v. Berrier*, 28 F.4th 883, 888 (8th Cir. 2022) (quoting *United States v. Fiorito*, 640 F.3d 338, 352 (8th Cir. 2011)) (internal quotation marks omitted). The Eighth Circuit has "cautioned district courts that substantial variances based upon factors already taken into account in a defendant's guidelines sentencing range seriously undermine sentencing uniformity." *United States v. Solis-Bermudez*, 501 F.3d 882, 885 (8th Cir. 2007) (quoting *United States v. Morales-Uribe,* 470 F.3d 1282, 1286 (8th Cir. 2006)) (internal quotation marks omitted); *see United States v. Martinez*, 821 F.3d 984, 989–90 (8th Cir. 2016) (vacating upward variance from a 121-to-151-month range to 262 to 327 months that rested on criminal history already counted in the range).

Finally, only 3% of defendants sentenced under U.S.S.G. § 2G2.2 receive an upward variance, with an average sentence increase of 50%. U.S. Sent'g Comm'n, Quick Facts: Child Pornography Offenses (FY 2025), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Child_Pornography_FY25.pdf. The government does not—and cannot—justify an extreme statistical outlier of a variance based on the facts of this case.

B. <u>Similarly Situated Federal Defendants Have Already Received Far Shorter Sentences.</u>

Mr. Eichorn's initial sentencing position cited twelve cases across the country where defendants who were convicted of *actually possessing* child pornography, most with guidelines ranges higher than Mr. Eichorn's, were sentenced to little or no incarceration. (ECF No. 107 at 16–18.) The government's sentencing position does not address *any* sentences of similarly situated defendants.

Mr. Eichorn will not repeat the arguments or underlying data described in his initial sentencing position regarding the non-custodial sentences received by defendants with no criminal history (like Mr. Eichorn) who were charged by the state with the same state crime for which he was originally arrested. (ECF No. 107 at 21–24.) But given the government's request for an upward variance, it is worth repeating that two defendants charged in this District who were arrested in the same state sting operation as Mr. Eichorn, both of whom pleaded guilty to an offense which requires a mandatory minimum sentence of ten years, were sentenced to serve 24 months. *United States v. Huerta-Sanchez,* No. 0:25-cr-00129-ECT-SGE, ECF No. 31 at 4–5, ECF No. 58 at 2 (D. Minn. Oct. 27, 2025; June 29, 2026); *United States*

*v. Cazhco-Inamagua,* No. 0:25-cr-00128-ECT-SGE, ECF No. 55 at 4–5, ECF No. 68 at 2 (D. Minn. Nov. 20, 2025; July 20, 2026). The public dockets for those two cases do not reveal how or why those defendants received sentences 80% below their ten-year mandatory minimums. Regardless of what occurred outside the public's view, those defendants received sentences well below what the government now requests for Mr. Eichorn.

Mr. Eichorn respectfully requests the Court consider that when Mr. Eichorn moved to dismiss the indictment and argued that he was singled out by the government because he was a state senator, the government represented to the Court that it was treating him exactly like the other defendants arrested in the same sting. In defending the decision to charge Mr. Eichorn federally while not seeking federal charges against 15 other individuals arrested in the same state sting, the government told the Court that Mr. Eichorn "was charged because, just like the three other people apprehended in this sting who now face federal charges, . . . Eichorn tried to buy sex from a child." (ECF No. 43 at 9.) The government told the Court at that time that "selective prosecution claims fail where the government has prosecuted similarly situated defendants"—a rule, the government said, that "dooms Eichorn's claim here, where the government has repeatedly prosecuted and is currently prosecuting similarly situated defendants." (ECF No. 62 at 2.)

When it was defending its decision to indict Mr. Eichorn on federal charges rather than allow the state to prosecute him, the government identified Mr. Huerta-Sanchez and Mr. Cazhco-Inamagua by name as defendants "just like"

Mr. Eichorn and "similarly situated" to him. Yet the government now asks this Court to imprison Mr. Eichorn for two and a half times their sentences. Mr. Eichorn does not seek to relitigate his pretrial motions, but the government cannot have it both ways.

If those defendants were similarly situated to Mr. Eichorn when he sought to dismiss the indictment, then they are similarly situated now, when Section 3553(a)(6) makes the comparison mandatory. The only apparent characteristic that distinguishes Mr. Eichorn from the comparators the government itself selected is that he was a state senator—the very consideration the government assured this Court played no role in its treatment of him. *See* ECF No. 43 at 9 ("Eichorn was not charged because he held public office."). If the government genuinely believed Mr. Eichorn was as dangerous as it portrays him, based solely on the crime he committed, then the government would have prosecuted the other 15 defendants charged only at the state level and sought five-year prison sentences and lifetime supervision. Tellingly, the government has not done so.

C. <u>The Government's Request Is an Extreme Outlier From Its Own Sentencing Practice.</u>

The extreme nature of the government's request becomes even clearer when comparing its sentencing position here to sentencing positions filed in cases involving dangerous crimes, most committed by defendants with extensive criminal histories. In each of the following cases, the government requested sentences within the defendants' guidelines ranges: *United States v. Sughroue*, No. 24-cr-239 (JRT/JFD), ECF No. 56 at 1, 4 (D. Minn. Apr. 30, 2025) (requesting a sentence in the middle of

the guidelines range, 100 months, for a defendant in Criminal History Category I who pulled a 16-year-old girl out of her car at knifepoint and stabbed a second carjacking victim in the neck numerous times, nearly killing him); *United States v. Powell*, No. 24-cr-86 (ADM/JFD), ECF No. 35 at 1, 3 (D. Minn. Nov. 7, 2024) (requesting a sentence in the middle of the guidelines range, 168 months, for a career offender who committed his fifth felony, and fourth violent felony, by pointing a handgun in a store clerk's face at close range); *United States v. Carter*, No. 24-cr-235 (JWB/TNL), ECF No. 86 at 1, 3 (D. Minn. Feb. 24, 2026) (requesting a sentence in the middle of the guidelines range, 108 months, for a four-time felon who possessed more than 200 grams of fentanyl for distribution along with a handgun equipped with a machine gun conversion device); *United States v. Ward*, No. 24-cr-177 (SRN/DJF), ECF No. 41 at 1, 4 (D. Minn. Jan. 13, 2025) (requesting a sentence in the middle of the guidelines range, 84 months, for a defendant with 25 criminal history points who committed two Hobbs Act robberies); *United States v. Brown*, No. 24-cr-220 (DWF/DLM), ECF No. 56 at 1, 3 (D. Minn. Oct. 23, 2025) (requesting a sentence at the bottom of the guidelines range, 77 months, for a five-time felon with a history of violent crime who kept a loaded semiautomatic pistol fitted with a 40-round extended magazine in a home where children lived); *United States v. McCaleb-Robinson*, No. 25-cr-33 (MJD/ECW), ECF No. 40 at 1, 3–4 (D. Minn. Dec. 1, 2025) (requesting a sentence in the middle of the guidelines range, 40 months, for a three-time felon found with two loaded handguns (one stolen and equipped with a machine gun conversion device), whose

prior felonies included shooting at a residence and striking a female with his firearm, and who amassed 19 disciplinary infractions in jail during the case).

To be fair, in all but one of the above cases, the government sought sentences higher than what it seeks for Mr. Eichorn. But in none of those cases did the government seek an upward variance, much less a sentence four times the bottom of the defendant's guidelines range. This discrepancy again begs the question of why the government is seeking such a remarkable variance for Mr. Eichorn—a first-time offender whose offense involved no actual victim, no weapons, no drugs, no violence, and who has incurred zero infractions since his arrest. Even if the government admits to seeking the variance based on Mr. Eichorn's position as a public official, its position is inconsistent with Section 3553(a)'s mandate and a dramatic departure from the government's charging-and-sentencing practices.

D. <u>Upward Variances of This Magnitude Are Reserved for Records of Violence and Recidivism, Unlike the Record in This Case.</u>

If the Court were to grant the government's request for an upward variance, it would be a departure from this District's sentencing practices. According to the most recent year of Sentencing Commission data for the District of Minnesota (FY 2025), there were 396 sentencings in the District. Just *one* of those 396 sentences was an upward variance. U.S. Sent'g Comm'n, Statistical Information Packet, District of Minnesota (FY 2025) at 12, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2025/mn25.pdf. Data from the previous two years is similar: in FY 2024, only 2.1% of sentences (8 out of 375 sentences) were

upward variances; in FY 2023, only 2.8% of sentences (10 out of 353 sentences) were upward variances. U.S. Sent'g Comm'n, Statistical Information Packet, District of Minnesota (FY 2023, 2024) at 12, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2023/mn23.pdf, and https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2024/mn24.pdf. Therefore, granting an upward variance would represent a statistical anomaly in this District.

When the Eighth Circuit has sustained substantial upward variances, the records look nothing like the one in this case. In *United States v. Richart*, 662 F.3d 1037, 1048–50 (8th Cir. 2011), the court affirmed a sentence roughly twenty times the guidelines range, for a defendant whose false statements concealed her own murder of her 14-year-old niece, established at an evidentiary hearing. In *United States v. Haskins*, 101 F.4th 997, 998–1000 (8th Cir. 2024), the court affirmed a variance to the statutory maximum (roughly double the guidelines range) for an armed drug trafficker who had committed a premeditated murder. In *United States v. Washington*, 515 F.3d 861, 866–67 (8th Cir. 2008), a variance of nearly double the guidelines range was sustained because the defendant returned to identical armed robbery conduct within five months of completing a 78-month sentence for the same crime. Murder, recidivism, proven violence: none of those factors are present in this case. Where upward variances have rested on less, the Eighth Circuit has vacated them. *Martinez*, 821 F.3d at 989–90; *Berrier*, 28 F.4th at 888.

## II. Imposition of a Life Term of Supervised Release Would Be Greater Than Necessary and an Unwarranted Sentencing Disparity.

Congress authorized a supervised release term of five years to life for Mr. Eichorn's offense. 18 U.S.C. § 3583(k); PSR ¶ 67. While U.S.S.G. § 5D1.2(b)(2) recommends the statutory maximum in sex offense cases, the Eighth Circuit has recognized that the provision is a recommendation, not a requirement, and that the length of supervision is governed by the same Section 3553(a) factors that govern imprisonment. *See United States v. Carson*, 924 F.3d 467, 471 (8th Cir. 2019).

Where the Eighth Circuit has sustained lifetime supervision, the record contained what this one lacks. In *United States v. DeMarrias*, a psychological examination diagnosed a paraphilic disorder, the defendant had repeatedly violated supervision, and the district court made an express finding of significant recidivism risk. 895 F.3d 570, 573–75 (8th Cir. 2018). In *United States v. James*, the defendant had documented diagnoses of sexual psychopathy and a decades-long, multi-victim history. 792 F.3d 962, 967–69 (8th Cir. 2015). Mr. Eichorn's record contains no such diagnosis, no dangerousness finding, no prior offense of any kind, no allegations of misconduct involving an actual minor, and his conduct on pretrial release and in custody has been stellar. (PSR ¶¶ 7, 37.)

### A. <u>A Life Term of Supervision Would Be an Unwarranted Disparity With Similarly Situated Defendants.</u>

A life term of supervision is imposed in only 2% of cases where supervised release is ordered, and "follow[s] an average prison sentence of 241 months," for crimes much more serious than the one Mr. Eichorn committed. U.S. Sent'g Comm'n,

Quick Facts: Supervised Release (FY 2025), available at https://www.ussc.gov/research/quick-facts/supervised-release. Imposing a life term of supervised release on Mr. Eichorn would be much greater than necessary and an unwarranted sentencing disparity.

Defendants similarly situated to Mr. Eichorn have received far less than the life term of supervised release the government requests. One of the federal defendants arrested in the same sting operation as Mr. Eichorn was sentenced to five years of supervised release. *Cazhco-Inamagua,* No. 0:25-cr-00128-ECT-SGE, ECF No. 68 at 3 (D. Minn. July 20, 2026). The other was sentenced to no term of supervised release. *Huerta-Sanchez,* No. 0:25-cr-00129-ECT-SGE, ECF No. 58 at 3 (D. Minn. June 29, 2026). Of the two South Dakota defendants sentenced for attempted possession of child pornography discussed in Mr. Eichorn's initial sentencing position (ECF No. 107 at 15–16), one received five years of supervised release, and because the other defendant was sentenced to two years of probation, no supervised release was imposed. *Shangreaux*, No. 5:19CR50118, ECF No. 68 (D.S.D. Sept. 3, 2021); *Kammerer*, No. 5:16CR50112, ECF No. 50 (D.S.D. Oct. 4, 2017).

Sentencing Mr. Eichorn to a life term of supervised release would also be an aberration compared to defendants in this District convicted of *actually* producing, receiving, and possessing child pornography. Those defendants, some of whom engaged in hands-on abuse of children, have received supervised release terms of ten to thirty years, not life. *See United States v. Anderson*, 90 F.4th 1226, 1227 (8th Cir. 2024) (affirming a sentence including 12 years of supervised release for production of

child pornography, enticement of a minor, and interstate communication with intent to extort); *United States v. Johnson*, No. 14-159 (DWF/TNL), 2021 WL 1550460, at *1 (D. Minn. Apr. 20, 2021) (15 years of supervised release for production of child pornography); *United States v. Parshall*, No. 19-123 (JRT), 2021 WL 4865591, at *1 (D. Minn. Oct. 19, 2021) (10 years of supervised release for attempted production of child pornography by a defendant previously found guilty of aggravated sexual abuse of a minor); *United States v. Erickson*, 388 F. Supp. 3d 1086, 1087 (D. Minn. 2019) (10 years of supervised release for receipt of child pornography involving identified victims); *United States v. Meillier*, 650 F. Supp. 2d 887, 888 (D. Minn. 2009) (30 years of supervised release following sentence of one day of imprisonment for possession of child pornography). If defendants in this District who possessed or produced actual child pornography received terms of years, a life term for a defendant who attempted to possess an image that did not exist would be precisely the unwarranted disparity Section 3553(a)(6) forbids.

Mr. Eichorn respectfully requests this Court sentence him to no more than five years of supervised release. If the five-year term proves insufficient, which appears highly unlikely given Mr. Eichorn's exceptional record of compliance to date, 18 U.S.C. § 3583(e)(2) authorizes the Court to extend the term at any time before it expires.

B. The Supervised Contact With Minors Condition Should Not Apply to Mr. Eichorn's Four Children, Niece, or Nephew.

The PSR recommended a special condition of supervised release that Mr. Eichorn "not associate with persons under the age of 18 except in the presence of

a responsible adult who is aware of the nature of the defendant's background and current offense and who has been approved by the probation officer." (PSR ¶ 91.) The government's counsel has advised undersigned counsel that the government does not object to an exception of this supervised contact condition as to Mr. Eichorn's four children or his niece and nephew. Therefore, for the reasons raised in Mr. Eichorn's sentencing position, Mr. Eichorn respectfully requests the Court order that he can spend time with his children and his niece and nephew without supervision.

## CONCLUSION

For the reasons described above and in his sentencing position, ECF No. 107,[1] Mr. Eichorn respectfully requests that the Court reject the government's requested upward variance and impose a sentence of time served, followed by a five-year term of supervised release.

September 16, 2026

Respectfully submitted,

*/s/ Brent A. Hannafan*

Brent A. Hannafan (TN BPR# 25209)
Litson PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
E-mail: brent@litson.co
*Attorney for Justin Eichorn*

---

1 Mr. Eichorn has completed a total of 120 jail courses. His sentencing position attached the 48 certificates available at the time of filing, and he will supplement those with an additional 72 certificates undersigned counsel has since received. Mr. Eichorn is also separately filing under seal an additional letter of support.

*/s/ Ryan Pacyga*

Ryan Pacyga Criminal Defense
860 Blue Gentian Road, Suite 175
St. Paul, MN
612-339-5844
ryan@arrestedmn.com
*Attorney for Justin Eichorn*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of September, 2026, a true and correct copy of the foregoing has been served via the Court's CM/ECF system upon all counsel of record.

*/s/ Ryan Pacyga*